191 So. 375

## BAKER v. MORRISON et al.

### 7 Div. 559.

Supreme Court of Alabama.

Oct. 5, 1939.

Irby A. Keener, of Center, for appellant.

314

Savage & Savage, of Center, for appellees.

THOMAS, Justice.

The suit was originally ejectment. The suggestion was made to the court that there were certain equities involved in the cause that could only be determined in a court of chancery, and the cause was transferred, by agreement of all parties at interest, to the equity side of the docket.

The pleadings were recast, Morrison and Covington becoming the complainants and King Baker, the appellant, becoming respondent, as provided by law in such a case.

The decree was for appellees and this action of the trial court is the only question presented by assignment of error and argued by counsel for appellant.

The pleading being recast was the amended bill of complaint by Morrison and Covington, and called upon respondent King to declare his title, praying that the same be removed as a cloud upon the title of Morrison and directing that the lands be released from the mortgage and lien thereon executed to said King; that the foreclosure deed of respondent King, which is of record, be declared of no force and effect as to title to the lands involved in this suit; and that the register of the court be directed to make entries pursuant thereto on the margin of the record of the mortgage to King; and that such other acts as the court deemed necessary and proper to remove such cloud from the title of the lands of T. H. Morrison be done.

The lands described in appellant Baker's cross bill and in his complaint, as filed in the law side of the court, were sold and conveyed by James H. Rowe and his wife Grace Rowe to Missouri E. Lee on January 15th, 1919, said deed being recorded and exhibited as part of the pleadings. Thereafter and on February 15th, 1919, the said Lee obtained a loan of $1,250 from one A. G. King and for the purpose of securing said loan gave to the said King her mortgage, in which her husband, J. M. Lee, joined, conveyed to King the lands described in appellant's cross bill, in addition to other lands. Said mortgage was exhibited by the pleadings.

The debt secured by said mortgage was evidenced by a series of principal and interest notes being numbered principal and interest notes which are exhibited.

This mortgage, together with the unpaid notes secured thereby, were thereafter and on January 11th, 1926, duly transferred and assigned in writing by said King to S. G. Stinson, who is now dead. Said original transfer and assignment are appellant's Exhibit "4". The transfer of said notes by A. G. King to S. G. Stinson also appear on the back of each of said notes.

After said transfer and prior to May 29th, 1928, the said transferee and assignee of said mortgage, notes and the debt thereby evidenced and secured, died and his son W. G. Stinson was duly appointed and qualified in the Probate Court as administrator of his estate, as appears from original letters of administration granted to W. G. Stinson, administrator of the estate of S. G. Stinson, deceased, said letters of administration being exhibited in appellant's pleadings.

In due course of administration of said estate, the administrator duly transferred and assigned to this appellant the said mortgage, together with the notes and debt thereby secured and of date of January 21st, 1930, for the unpaid balance due thereon of $1,183.24, which said sum represented the true amount due thereon on the day and date of said transfer. This assignment and transfer appears on the back of said mortgage and on said day and date the said W. G. Stinson as administrator, as aforesaid, verified the amount then remaining due and unpaid on said notes and obtained the written consent and ratification of M. E. Lee and her husband, J. M. Lee, of such transfer and assignment to the appellant; said ratification and consent being in writing and on the back of said mortgage, and being signed by the said Missouri E. Lee and Jerry M. Lee, and their signatures thereto being witnessed by Glenn Williamson.

On December 5th, 1932, the debt secured by said mortgage and evidenced by said notes so owned by the said King Baker, being in default, was foreclosed, in accordance with all the terms and conditions as contained therein, after due advertisement as provided for by said mortgage, and on

December 5th, 1932, did sell all the lands described in said mortgage, including the lands described in appellant's cross bill in this cause, in front of the Courthouse door in Center, and at said sale appellant became the purchaser of said lands at and for the sum of $1,166.17. On said day and date and as transferee of said mortgage appellant made and executed to King Baker a proper deed as provided for by said mortgage and under the law, conveying the lands so purchased at said foreclosure sale. This deed was duly filed for record in the Probate Office on June 7th, 1932, and recorded. Said original deed is appellant's Exhibit "9". Thereafter, and on May 9th, 1935, appellant as such purchaser made written demand upon the said T. H. Morrison and Shaley Covington for the possession of the lands described in his cross bill in this cause, said demand being made through his attorney, a carbon copy of which was properly identified upon the hearing in this cause by the testimony of T. H. Morrison, and duly exhibited. After receipt of said demand the said T. H. Morrison and Shaley Covington, appellees, failed and refused to comply with said demand and to deliver possession of said lands to this appellant, who thereupon filed this suit in ejectment, which said cause was duly transferred, as hereinabove stated, to the equity side of said docket and is now before this court on appeal.

The appellee Shaley Covington, at the time of the institution of this litigation, was in possession of the lands involved in this suit, having rented the same from appellee Morrison, and other than this alleged tenancy claims no right, title or interest in said lands.

The appellee Morrison claims title to said lands under a deed from one Felton Rowland, dated May 12th, 1925, and which deed is recorded. This deed was made nearly six years after the execution, recordation and delivery of the King mortgage which was foreclosed by appellant and it is insisted by appellant that appellee's title is subordinate to said mortgage.

Appellees insist that in November, 1921, A. G. King, the then owner and holder of the mortgage and debt thereby secured, released the lands involved in this litigation from the operation of the mortgage for the sum of $437.20, and to prove this offered the evidence of C. B. Sims. In the testimony of witness Sims certain correspondence between the witness and the law firm indicated was identified and introduced in evidence. It appears from appellees' Exhibit "B" that the debt secured by said mortgage was partially in default and about to be foreclosed and that someone wanted to take up the past due amount; and from appellees' Exhibit "C" that on November 26th, 1921, through the witness Sims the sum of $437.20 was paid on mortgage debt and proper credit given therefor. The witness Sims says: "This matter (Payment of $437.20) being closed the release of this land from the mortgage was overlooked by the witness and I did not know that the release had never been made until this suit was filed." There is no evidence that Mrs. A. G. King, the mortgagee, and the owner, holder and transferor of said mortgage ever heard of this alleged release, or authorized or consented thereto. To the contrary it appears from her unqualified and unconditioned transfer of said mortgage that she had never released any part of the land given as security of said mortgage.

In the deed from Felton Rowland to appellee Morrison, the consideration is recited as "the settlement of all the indebtedness of Felton Rowland to G. F. Morrison, deceased, which is evidenced by a deed of trust dated November 9th, 1922, and recorded, and by account of said G. F. Morrison against said Felton Rowland said deed of trust being cancelled upon the execution of this deed." The deed of trust referred to is set out in the record in its entirety and as taken from said record and shows that it has never been cancelled, and, so far as said record shows, has never been paid.

The appellee offers as a defense to appellant's cross bill, and in support of his own title "that a great many years ago and at the time of the transfer and assignment of said mortgage to S. G. Stinson, now deceased, that there had been a release of the lands described in appellant's cross bill, said release alleged to have been made by A. G. King, the mortgagee, owner and holder of the debt secured thereby."

The appellant paid a valuable consideration for this mortgage and to protect himself in the same was forced to foreclose and at said foreclosure sale became the purchaser of the said lands and became vested with all title to said land, subject only to the outstanding mortgage to the Federal Land Bank of New Orleans. The

appellee sought to show ownership of and superior title to the lands sought to be recovered by appellant by parol testimony, as to the release, the assessment and payment of taxes, and long possession of the land.

It is insisted by appellant that, under our statute of frauds, such will not suffice. Section 8034, Code of 1923; Phillips v. Phillips, 224 Ala. 321, 140 So. 434; Hancock et al. v. Watt, 233 Ala. 29, 169 So. 704.

What, then, are the facts relative to adverse possession from the time of the alleged release to that of the sale, trial and decree? The record evidence and testimony of Sims show that $437.20 was paid by Sims on November 26, 1921, and to prevent foreclosure of the mortgage in question, which was in default in the sum of $391.21, and that this sum and interest amounting to $437.20 was paid to the attorney having the Missouri Lee mortgage for foreclosure and collection.

The evidence of Sims is to the further effect that:

"This matter being closed the release of this land from the mortgage was overlooked by the witness and I did not know that the release had never been made until this suit was filed.

"I also represented Mr. S. G. Stinson, and some time after the original transaction Mr. Stinson took a mortgage on the lands of Missouri E. Lee, subject to the King mortgage. My recollection is that this mortgage was on Mrs. Lee's original tract of land. In the fall of 1925, Mr. Inzer called me in regard to the Lee mortgage and said they would have to foreclose it. Mr. Stinson then agreed to take up the original mortgage and I made the transaction with him. I informed him at the time that the lands involved in this suit had been conveyed to Mr. Morrison who was at that time in possession of the lands and had been for some time, and Mr. Stinson said he knew that. (File copy of letter of myself to Inzer is attached and marked Exhibit 'D'.)"

See the case of Girard Fire & Marine Ins. Co. v. Gunn, 221 Ala. 654, 130 So. 180, as to binding knowledge by attorney.

"Complainant's Exhibit 'D'
"Center, Alabama,
"November 20, 1925.
"Inzer & Inzer, Attorneys,
"Gadsden, Alabama.
"Gentlemen:
"In re: Missouri E. Lee, Loan.

"Mr. S. G. Stinson was just in my office and said that Mr. Lee had informed him that unless he made some arrangement in regard to this loan that it would be foreclosed. Mr. Stinson has a second mortgage on the property, and requests me to advise you that if you are preparing to foreclose the loan, not to add any fees, but advise him the amount necessary to take up the papers, and he would pay it and take a transfer of the papers.

"Please advise me or Mr. Stinson as early as you can.

"Yours very truly,
"(signed)    C. B. Sims."

"I called Mr. Inzer and my recollection is that the mortgage was sent to Farmers & Merchants Bank with draft attached and same was honored by Mr. Stinson and the original mortgage transferred to him. Mr. Stinson was informed all the time that the lands in this suit had been released from the original mortgage and did not claim that part of the land.

"After the death of Mr. S. G. Stinson I represented the heirs of the estate of S. G. Stinson, and W. G. Stinson was the administrator of the estate, and he talked with me about this mortgage and I informed him that the lands in this suit had been released from the original King mortgage and he said as I recollect that he knew that and did not make any claim to land involved in this suit.

"Q. Then so far as S. G. Stinson in the purchase or transfer of the A. G. King mortgage, the lands here involved were known and understood to be no further subject to the lien mortgage? A. That is true."

The evidence of Captain Savage indicated that the payment of the $437.20 to Mrs. King was for a release of the Rowe-Morrison lands and that the transferee who foreclosed the mortgage had knowledge thereof that barred and estopped the purchaser at foreclosure sale.

This evidence was competent and tending to support the evidence of character of possession and to rebut that of the lack of actual notice contrary to constructive notice and imparted by the record of mortgages. The subsequent conduct of appellant and predecessors in title confirmed the view of the trial court that they went into possession of other lands embraced in the mortgage in question and did not take possession nor demand rent therefor of the lands in controversy. The evidence shows that Felton Rowland and Morrison were

 

and are in continuous possession of the lands since 1921, and the bill was filed in 1935. It further appears in evidence that appellant, since 1921, only assessed for the taxes the lands so possessed by him or predecessor in title, the "Lee lands" and no part of the "Rowe or Morrison lands."

When the whole evidence is looked to, the decree of the trial court is to the proper effect. It is that:

"* * * the Court * * * has reached the conclusion that the Respondent, Cross Complainant, King Baker, is not entitled to the relief prayed for in his Cross-Complaint, nor to any relief thereunder, and that Complainants in original complaint, Cross Respondents, are entitled to the relief prayed for in original complaint, as amended, in this cause, and are entitled to have all right, title and interest claimed and asserted by Respondent, King Baker, from whatever source claimed, derived or obtained, in and to the lands described in bill of Complaint, as amended, divested out of him, King Baker, and invested in Complainant, T. H. Morrison, as prayed.

"It is, therefore, hereby ordered, adjudged and decreed by this Court that any and all right, title and interest of Respondent King Baker, from whatsoever source claimed, in and to:

"Fraction 'A', East of Coosa River, in Section 13, Township 11, South of Range 8, East, containing 60 acres, more or less. Also the Southeast Quarter of the Northwest Quarter of Section 13, Township 11, South of Range 8, East, containing 36 acres, situated in Cherokee County, Alabama, be, and the same is hereby divested out of him, the said King Baker, and all right, title and interest in the said lands are hereby vested in Complainant, T. H. Morrison."

The subsequent conduct of appellant and predecessors in title confirmed the view of the release and notice thereof by appellant—that they went into possession of other lands embraced in the mortgage (as the Lee lands) and made no claim to the Rowe or Morrison lands. The continuous possession as owners, hostile and adverse to the world by Rowland and Morrison was its character from 1921 to the time of the filing of the instant suit and bill in 1935, supports the decree rendered. So also the further fact that appellant only took possession of and assessed for taxes the other lands embraced in the mortgage, known as the Lee lands, and did not assess

the Rowe or Morrison lands, as indicated in the mortgage, the latter being subject to the release in question. That is to say, when the whole evidence is looked to the decree of the trial court is to the proper effect and should be and is affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and BROWN, JJ., concur.